**AgriVEST PARTNERSHIP, Appellee,**

v.

**CENTRAL IOWA PRODUCTION CREDIT ASSOCIATION,** Appellant.

No. 84–1020.

Supreme Court of Iowa.

Aug. 21, 1985.

Robert J. Baudino, Jr., and Barbara A. Buhr of Neiman, Neiman, Stone & Spellman, P.C., Des Moines, for appellant.

Curt N. Daniels, Mingo, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

REYNOLDSON, Chief Justice.

In this appeal from an interlocutory order, defendant Central Iowa Production Credit Association (CIPCA) challenges the district court's ruling requiring it to comply with plaintiff AgriVest Partnership's request for production of documents. We affirm.

AgriVest, a partnership comprised of Indian Creek Corporation and AgriShare Limited, has a hog-raising operation in Jasper County. CIPCA, a corporation organized under 12 U.S.C. section 2091 and following, provides credit to farmers.

September 16, 1983, AgriVest filed an amended and substituted petition in the Iowa District Court for Jasper County seeking damages from CIPCA under several theories. AgriVest generally alleged CIPCA wrongfully informed meat packing plants to which AgriVest sold hogs that CIPCA had a security interest in AgriVest's livestock. At CIPCA's request, the packing plants allegedly issued checks for AgriVest's hogs payable to AgriVest and CIPCA jointly. AgriVest alleged CIPCA's refusal to endorse and deliver these checks denied AgriVest the money required to continue its business. As a result, AgriVest filed a voluntary bankruptcy petition in the United States Bankruptcy Court for the Southern District of Iowa.[1] In the petition before us, AgriVest seeks $100,000 in actu-

---

1. A ruling attached to AgriVest's petition discloses the United States Bankruptcy Court for the Southern District of Iowa held that CIPCA "does not have a valid security interest in any of [AgriVest's] livestock" and directed CIPCA "to cease and desist from claiming any security interest in [AgriVest's] livestock."

al damages and $300,000 in punitive damages.

January 18, 1984, AgriVest filed its first request for production of documents. At issue here is that portion requesting "[a]ll Board Meeting minutes whether formal or informal for the period of July 1, 1979 to January 1, 1984 as well as any supporting documentation regarding the minutes discussing the status of any and all loans made to AgriVest Partnership, Indian Creek Corporation, or AgriShare Limited and all discussions concerning AgriVest Partnership, AgriShare Limited, Indian Creek Corporation." Obviously, the object of AgriVest's request was to uncover facts to support its allegation that CIPCA sought to "harass" and "torment" AgriVest.

CIPCA did not comply with AgriVest's request. February 17, AgriVest filed a motion to compel discovery. CIPCA resisted and moved for a protective order. In support of its motion CIPCA asserted:

> The 4½ years of minutes of the meetings of the Board of Directors concern many other borrowers of the Defendant, along with discussion of financial details and classification of loans. The materials sought would have little or no relevance to the pending action, and no confidential information concerning any party other than the Plaintiff should be disclosed. Any disclosure concerning other parties would be a violation of the regulations of the Farm Credit System and would jeopardize the Defendant's eligibility to refinance its loans through the Federal Intermediate Credit Bank of Omaha.

March 29, district court found AgriVest's request for production appeared reasonably calculated to lead to discovery of admissible evidence.[2] The court then ruled that

> [t]he discovery of the requested information should take place at the office of the Defendant or office of the Defendant's counsel. Plaintiff's counsel shall be allowed to make copies of requested documents at Plaintiff's expense subject to objections of defense counsel as to the work product and attorney-client privilege.

> If at the time of this discovery the Defendant makes objections to the scope of the discovery requested by the Plaintiff *based upon work product or attorney-client privilege* then the Court shall hold an *in camera* hearing to determine the objections.

(Emphasis added.) CIPCA was given thirty days to comply with AgriVest's request.

April 30, CIPCA filed a "Response to the Motion to Produce," which stated it had complied with AgriVest's discovery request with three exceptions. In lieu of disclosing its board meeting minutes, CIPCA supplied AgriVest with an excerpt from its September 2, 1983, board meeting that contained no mention of AgriVest or its partners.

May 11, AgriVest filed another motion, renewing its January 18 request to inspect and copy board minutes.

May 29, a second hearing was held in district court with a different judge presiding. When the parties were unable to resolve their disputes, the court suggested two alternative procedures. The hearing was continued until June 4.

June 4, CIPCA reported that neither of the court's alternatives was acceptable. As an alternative, CIPCA suggested the court examine the board meeting minutes *in camera* and allow AgriVest to copy those found relevant. The court declined the suggestion. Instead, it ruled that CIPCA's "board meeting minutes [shall be examined by AgriVest's attorney, who was ordered not to disclose] any information gained during discovery without prior court order, with the exception that any copies ... could be disclosed to 'co-parties' or partners." Further objections to production were to be determined by the court after hearing.

July 2, CIPCA applied for grant of appeal in advance of final judgment. It alleged regulations promulgated by the Farm

---

**2.** *See* Iowa R.Civ.P. 122(a).

Credit System required it to withhold the highly confidential information concerning borrowers and personnel contained in its board meeting minutes. Such a violation of the regulations, CIPCA asserted, could disqualify it from refinancing its loans through the Federal Intermediate Credit Bank. CIPCA raised the probability of suits by member-borrowers and employees should it be forced to breach the alleged confidentiality of the minutes. We granted the application.

I. A threshold issue is whether Iowa or federal law controls the determination whether CIPCA has a privilege that insulates its board meeting minutes from the reach of AgriVest's discovery request. The underlying suit is indisputably a state law action in which Iowa law will rule the decision. CIPCA, however, is a federally chartered corporation. While it is privately owned and a legal entity "separate and apart from the federal government in the usual sense," it is nonetheless a federal instrumentality vested with a public interest. Brake, *A Perspective on Federal Involvement in Agricultural Credit Programs*, 19 S.D.L.Rev. 567, 577 (1974). *See also Merced Production Credit Association v. Sparkman*, 703 F.2d 1097, 1100 (9th Cir.1983); *Southwest Washington Production Credit Association v. Fender*, 21 Wash.2d 349, 353, 150 P.2d 983, 985 (1944). CIPCA's assertion of privilege is based in part on federal regulations. To the extent these regulations are relevant, we shall consider them as a federal court would. The remainder of our decision, however, is controlled by Iowa law.

In the end, application of federal or Iowa law to this issue will make little difference. Iowa Rule of Evidence 501 is similar to its federal counterpart.[3] *See* Iowa R.Evid. 501 committee comment. The principles we have enunciated in Iowa cases on privilege often derive from federal cases. *See, e.g., Farnum v. G.D. Searle & Co.*, 339 N.W.2d 384, 389 (Iowa 1983); *Lamberto v. Bown*, 326 N.W.2d 305, 307 (Iowa 1982).

■ II. This appeal presents a single question: Does regulation or common law provide CIPCA a privilege to withhold minutes of its board of directors meeting from discovery by AgriVest? Our scope of review is limited. Because discovery rules are to be liberally construed to effectuate the disclosure of relevant information to the parties, "[t]he trial court has wide discretion in its rulings on discovery issues and will be reversed only when an abuse of discretion is found." *Farnum*, 339 N.W.2d at 389.

■ III. Undergirding our discovery rules is the principle that litigants are entitled to every person's evidence. *Lamberto*, 326 N.W.2d at 306–07. The law favors full access to relevant information. *Association for Women in Science v. Califano*, 566 F.2d 339, 346 (D.C.Cir.1977). "[D]iscovery rules apply to the United States ... as fully as they apply to any other person." 8 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2019, at 153 (1970).

Iowa Rule of Civil Procedure 122(a) provides:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action....

Thus, a party may defeat discovery by establishing that the material sought is privileged or irrelevant. *Hickman v. Taylor*, 329 U.S. 495, 507–08, 67 S.Ct. 385, 392, 91 L.Ed. 451, 460–61 (1947). In this appeal, CIPCA relies on privilege.

■ One resisting discovery through assertion of a privilege has the burden to show the privilege exists and applies. *Robbins v. Iowa-Illinois Gas & Electric Co.*,

---

**3.** Iowa Rule of Evidence 501 provides:

Nothing in these rules shall be deemed to modify or supersede existing law relating to the privilege of a witness, person, government, state or political subdivision.

Federal Rule of Evidence 501 provides:

[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

160 N.W.2d 847, 855 (Iowa 1968); *see Heathman v. United States District Court*, 503 F.2d 1032, 1033 (9th Cir.1974). Privilege is an exception to the discovery rules and, consequently, is to be construed narrowly. *See, e.g., St. Regis Paper Co. v. United States*, 368 U.S. 208, 218, 82 S.Ct. 289, 295, 7 L.Ed.2d 240, 248 (1961) ("Ours is the duty to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result."); *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 518 (D.Del.1980) (The executive privilege is "an exception to the usually broad scope of discovery" and requires "consistency and [care] in ... assertion."); *Lamberto*, 326 N.W.2d at 307 (The duty of every person to give testimony is so compelling "even those privileges rooted in the federal constitution must give way in some circumstances."); 4 J. Moore, Moore's Federal Practice ¶ 26.60(1) (2d ed. 1984). When the asserted privilege is based on a statute, the terms of the statute define the reach of the privilege. 8 C. Wright and A. Miller, supra, § 2019, at 162.

In the light of these general rules, we examine the specific sources of privilege relied on by CIPCA.

A. *Regulation.*

CIPCA asserts a privilege based on a regulation appearing at 12 C.F.R. section 618.8300. That regulation provides:

> Except as necessary in performing official duties or as authorized in the following paragraphs, no director or employee of a bank, association, or agency thereof shall disclose information of a type not ordinarily contained in published reports or press releases regarding any such banks or associations or their borrowers or members.

A second, more specific, confidentiality provision appears at 12 C.F.R. section 618.-8320:

> (a) Except as provided in paragraph (b) of this section, the directors, officers, and employees of every bank and association shall hold in strict confidence all information regarding the character, credit standing, and property of borrowers and applicants for loans. They shall not exhibit or quote the following documents: Loan applications; supplementary statements by applicants; letters and statements relative to the character, credit standing, and property of borrowers and applicants; recommendations of loan committees; and reports of inspectors, fieldmen, investigators, and appraisers.

These two regulations form the basis of CIPCA's claim of confidentiality. We are not convinced these regulations were intended to govern the situation presented here, as we later explain.

■ Federal decisions generally hold that privileges should not be called into play merely because an agency, acting on only general authority, issues regulations declaring certain information privileged. *See, e.g., Association for Women in Science*, 566 F.2d at 343–44; *Canal Authority of State of Florida v. Froehlke*, 81 F.R.D. 609, 612 (M.D.Fla.1979). To do so would be to strip courts of the authority to determine the scope of discovery. *See Carr v. Monroe Manufacturing Co.*, 431 F.2d 384, 388 (5th Cir.1970); *Ackerly v. Ley*, 420 F.2d 1336, 1339 n. 3 (D.C.Cir.1969). Privileges based on statutes or explicit statutory authorization are treated differently. *See Baldrige v. Shapiro*, 455 U.S. 345, 360, 102 S.Ct. 1103, 1112, 71 L.Ed.2d 199, 212 (1982); *Association for Women in Science*, 566 F.2d at 343–44; *National Parks and Conservation Association v. Morton*, 498 F.2d 765, 766–67 (D.C.Cir.1974).

Sections of the United States Code governing the Farm Credit System indicate CIPCA's assertion of privilege in the context of discovery in the course of state litigation may not follow Congressional intent. For example, 12 U.S.C. section 2214 provides:

> State and other laws shall apply to corporations organized pursuant to this part to the same extent such laws would apply to the organizing banks engaged in the same activity in the same jurisdiction: *Provided, however,* That to the extent

that sections 2055, 2079, and 2134 of this title may exempt banks of the Farm Credit System from taxation, such exemptions, other than with respect to franchise taxes, shall not extend to corporations organized pursuant to this part.

This section is a sweeping waiver of sovereign immunity which, by its terms, equates a federal instrumentality with an ordinary state-chartered bank in Iowa. We view it as significant that, in adopting this statute, Congress made only one express exception to its general waiver. Obviously, Congress considered whether there should be exceptions to the general waiver and settled on one—taxation. Having concluded to provide one exception, Congress could easily have provided another, but did not. *See St. Regis Paper Co.*, 368 U.S. at 218, 82 S.Ct. at 295, 7 L.Ed.2d at 248 (When Congress wishes to protect certain reports from compulsory process, it knows how to do so.).

Title 12 U.S.C. section 2093 provides even stronger support for this view:

Each production credit association shall be a body corporate and ... shall have power to—

. . . .

(4) Sue and be sued.

This provision has never been interpreted in reported federal decisions. In *Federal Housing Administration v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), the Supreme Court interpreted an identical provision concerning the FHA. That provision provided:

The administrator shall ... be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.

National Housing Act, ch. 614, § 344(a), 49 Stat. 722 (1935) (current version at 12 U.S.C. § 1702 (1982)).

In *Burr* the FHA claimed immunity from state garnishment actions by virtue of its status as a federal instrumentality. *Id.* at 243, 60 S.Ct. at 489, 84 L.Ed. at 727. In construing the statutory framework within which the FHA operates, the *Burr* Court began with the observation that Congressional waivers of governmental immunity should be liberally construed. 309 U.S. at 245, 60 S.Ct. at 490, 84 L.Ed. at 728. The Court continued:

Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

Clearly the words "sue and be sued" in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings. Garnishment and attachment commonly are part and parcel of the process, provided by statute, for the collection of debts. ... To say that Congress did not intend to include such civil process in the words "sue and be sued" would in general deprive suits of some of their efficacy. Hence, in absence of special circumstances, we assume that when Congress authorized federal instrumentalities of the type here involved to "sue and be sued" it used those words in their usual and ordinary sense.

*Id.* at 245–46, 60 S.Ct. at 490–91, 84 L.Ed. at 728–29.

The regulations CIPCA relies on may be sound general policy: the type any bank might adopt to govern its personnel in dissemination of information generally. Section 618.8330 of 12 C.F.R., however, discloses an intent to provide information in a court proceeding by describing the manner in which an officer or employee of the Farm Credit Administration is to respond to a subpoena or request for discovery:

If a director, officer or employee of any association or bank is summoned as a witness in litigation to which neither the Government nor any Farm Credit organization is a party, for the purpose of testifying or producing documentary evidence with respect to matters which he is precluded by these regulations to disclose, he shall arrange, if possible, with the attorney who obtained the summons, to be excused from testifying. If not excused, he shall appear in response to the summons but, before testifying or producing documentary evidence as to confidential information, he shall respectfully advise the court of these regulations against disclosing such information and respectfully request that its confidential nature be safeguarded. After so doing, he may then testify or produce documentary evidence as to such information only to the extent and under the conditions directed by the court.

This provision, addressing discovery in a suit in which a production credit association is not a party, counsels greater liberality in providing information than CIPCA has demonstrated here, in an action in which it is a party.

█ We find the regulations CIPCA relies on were not intended to apply in the circumstances presented here. We thus hold CIPCA has no statutory or regulatory privilege insulating it from complying with AgriVest's discovery request.

B. *Common Law.*

In the alternative, CIPCA argues it has a common law privilege, peculiar to a government instrumentality, that insulates its board meeting minutes from discovery.

We agree the government has a number of privileges not available to other litigants. *Association for Women in Science,* 566 F.2d at 343. Although we are not convinced CIPCA is an instrumentality so closely allied with the federal government that it may avail itself of these privileges, we shall assume, arguendo, that it is.

█ Generally, four factors must be present to justify finding a privilege that will foreclose discovery:

(1) The communications must originate in a *confidence* that they will not be disclosed.

(2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

(3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

(4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of the litigation.

*Rosenblatt v. Northwest Airlines,* 54 F.R.D. 21, 22–23 (S.D.N.Y.1971) (quoting 8 J. Wigmore, *Evidence* § 2285 (McNaughton rev. 1961) (emphasis in original)).

Application of this four-factor test necessarily requires a balancing of the need for information sought and the harm that would result were the information to be disclosed. This balancing of interests is the approach taken by the clear majority of courts. *See, e.g., United States v. O'Neill,* 619 F.2d 222, 227 (3d Cir.1980); *Association for Women in Science,* 566 F.2d at 346; *Carr,* 431 F.2d at 388; *Dowd v. Calabrese,* 101 F.R.D. 427, 436 (D.D.C.1984); *Community Savings and Loan Association v. Federal Home Loan Bank Board,* 68 F.R.D. 378, 381 (E.D.Wis.1975).

█ In conformity with the prevailing view that discovery is broad and privilege is narrow, federal courts have erected hurdles to the government's invocation of privilege in the face of discovery. These hurdles had their genesis in *United States*

*v. Reynolds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). Generally, when an arm of the federal government wishes to invoke a privilege against discovery, it must (1) designate the particular material to be privileged, (2) articulate the precise reasons public interest would be adversely affected, and (3) submit an affidavit signed by the head of the agency attesting that he or she personally has reviewed the documents in question and finds the assertion of the privilege to be proper. The privilege may not be invoked by the government's attorney. *See, e.g., United States v. Winner,* 641 F.2d 825, 831 (10th Cir.1981); *O'Neill,* 619 F.2d at 225–26; *Exxon Corp. v. Department of Energy,* 91 F.R.D. 26, 43 (N.D. Tex.1981); *Coastal Corp.,* 86 F.R.D. at 519. These procedures are to be "strictly adhered to," *Winner,* 641 F.2d at 832, ensuring that privileges are "interposed judiciously, not casually," *O'Neill,* 619 F.2d at 225, and are in accord with views we have expressed on the few occasions the question of privilege has come before us. *See Farnum,* 339 N.W.2d at 389 (A party seeking a protective order in response to his opponent's request for discovery must make a particularized, factual case for protection of the information sought.); *Robbins,* 160 N.W.2d at 855 (When a party claims a privilege against discovery, the burden is on him to present facts establishing the privilege.).

■ CIPCA has not made a particularized case for its privileges. It has asserted a general privilege not to disclose any of the board minutes. No affidavit from any employee of the Farm Credit Administration, let alone the agency head, attests to the need to invoke the privilege here. Given the district court's order prohibiting disclosure of nonrelated information and Agri-Vest's need to cull the minutes for vital evidence, the balancing test tips the scales in favor of production. We hold CIPCA has not carried its burden to establish its asserted common law privilege.

The order of the district court is affirmed.

AFFIRMED.