William E. HUTCHINSON and Sandra S. Hutchinson, Plaintiffs,

v.

SMITH LABORATORIES, INC., Appellee,

Robert C. Jones, M.D., Defendant,

and

Mercy Hospital Medical Center, Appellant.

No. 86–325.

Supreme Court of Iowa.

Aug. 20, 1986.

Gregory R. Brown of Duncan, Jones, Riley & Finley, Des Moines, for appellant.

L.W. Rosebrook and William J. Noth of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

WOLLE, Justice.

This interlocutory appeal concerns the discoverability of documents generated by a hospital peer review committee. Defendant Mercy Hospital Medical Center (the hospital) challenges the district court's determination that peer review written records and reports concerning a surgical procedure performed at the hospital were not privileged and therefore were discoverable. We affirm.

Plaintiff William E. Hutchinson, Sr. entered the hospital for treatment of lower back pain. There, on June 11, 1984, his treatment by the defendant doctor, Robert C. Jones, included injection of a drug manufactured by defendant Smith Laboratories, Inc. (the manufacturer). In this action Hutchinson and his wife allege that the manufacturer, the hospital, and the doctor should be held jointly and severally liable for injuries and damages proximately caused by their sale and subsequent use of the drug in treating him.

The manufacturer pleaded as one of its defenses that the negligent acts or omissions of other parties constituted the sole proximate cause or a concurring proximate cause of the plaintiffs' injuries and damages. During the course of discovery, the manufacturer asked the hospital to produce documents identified as follows:

All peer-review and/or case review committee reports, minutes, documents, written communications, recommendations or writings of any kind relating to the chemonucleolysis procedure performed by Defendant Robert C. Jones, M.D. on Plaintiff William E. Hutchinson, Sr.

All reports, documents, written communications and/or writings of any kind, either prepared, reviewed, considered, or generated by or at the request of the ad hoc committee chaired by Marvin Dubansky, M.D. or its members, including but not limited to any minutes of meetings or recommendations thereof, relating to the performance of chemonucleolysis at Mercy Hospital Medical Center and/or the performance of the procedure by Defendant Robert C. Jones, M.D.

The hospital objected, contending that the requested production might lead to "a dissemination of privileged and/or confidential information, is irrelevant and requests work product." Following a hearing the trial court granted the manufacturer's resisted motion for production of the documents, writing that the hospital had failed to establish "privilege as an exception to the discovery rules for such self-evaluation efforts as peer review." We granted the hospital's request for interlocutory review of the district court's ruling.

The background facts are essentially undisputed, and the parties have well argued and narrowly focused the issues they present. The reports and minutes which the manufacturer seeks to discover are records of a medical staff committee peer review and evaluation of the drug-injection procedure performed on William Hutchinson. The committee was acting pursuant to a requirement of the Joint Commission on Accreditation of Hospitals. *See State ex. rel. Chandra v. Sprinkle,* 678 S.W.2d 804, 806 n. 2 (Mo.1984); *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973). The hospital maintains that its peer review records are entitled to a common law privilege, and it contends in the alternative that the information sought is entitled to a privilege based upon overriding public policy concerns. The hospital does not question in this appeal the trial court's finding that the *records which the manufacturer seeks to discover* may lead to the discovery of admissible evidentiary facts. *See* Iowa R.Civ.P. 122(a).

Discovery rules are to be liberally construed to effectuate disclosure of all relevant and material information to the par-

ties. *Mason v. Robinson,* 340 N.W.2d 236, 241 (Iowa 1983). "[T]he trial court has wide discretion in its rulings on discovery issues and will be reversed only when an abuse of discretion is found." *AgriVest Partnership v. Central Iowa Production Credit Association,* 373 N.W.2d 479, 482 (Iowa 1985) (quoting *Farnum v. G.D. Searle and Co.,* 339 N.W.2d 384, 389 (Iowa 1982)). "We find an abuse of discretion when such discretion is exercised on grounds or for such reasons clearly untenable or to an extent clearly unreasonable." *Hoekstra v. Farm Bureau Mutual Insurance Co.,* 382 N.W.2d 100, 108 (Iowa 1986) (quoting *Hubby v. State,* 331 N.W.2d 690, 697 (Iowa 1983)). An abuse of discretion is rarely found. *Hoekstra,* 382 N.W.2d at 108.

One resisting discovery through assertion of a privilege has the burden of showing that a privilege exists and applies. *AgriVest Partnership,* 373 N.W.2d at 482. Because any privilege is an exception to our rules governing discovery, an asserted privilege is to be construed narrowly. *Id.* at 483; *see* Iowa R.Civ.P. 122(a) ("Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence.")

The parties recognize that Iowa now has a broad statutory privilege for the writings and other records generated by a hospital peer review committee, explicitly set forth in a 1986 amendment to Iowa Code section 147.135 (1985). *See* 8 Iowa Legis.Serv. 21–22 (West 1976). They also agree, however, that this newly-adopted statute does not directly apply to the documents which the manufacturer in this case seeks to discover. By its own terms the statutory privilege applies only to "cases filed on or after July 1, 1986." *Id.* No other Iowa statute provides the type of privilege the hospital advocates, although several statutory provisions touch upon confidentiality of some hospital records. *See* Iowa Code § 135.42 (rendering certain morbidity and mortality tables inadmissible at trial); Iowa Code § 147.135 (1985) (immunizing peer review committee members from civil liability for "acts, omissions or decisions made in connection with the person's service" on the committee); Iowa Code § 258A.6(4) (1985) (recognizing a limited privilege of confidentiality for all files and reports in the possession of a peer review committee acting under the authority of a licensing board).

The hospital first urges us to recognize and adopt in this case a common law privilege covering these peer review records. We find no case or other authority, and none has been cited to us, that suggests such records were privileged at common law. We agree with what the Wisconsin Supreme Court wrote in rejecting a similar contention in *Davison v. St. Paul Fire and Marine Insurance Co.,* 75 Wis.2d 190, 201– 02, 248 N.W.2d 433, 440 (1977):

> We have been directed to no authority showing the existence of a common law right or privilege such as is asserted here and none has come to our attention. Neither McCormick, nor Wigmore, in their dissertations on privilege recognize such a common law privilege. We are of the opinion no such common law privilege exists.

The cases on which the hospital relies, while determining that such a privilege makes sense and should be adopted, derive the privilege not from common law roots but from "overwhelming public interest." *See e.g., Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. at 251 (hospital's minutes and reports entitled to a qualified privilege on the basis of "overwhelming public interest"); *Segal v. Roberts,* 380 So.2d 1049, 1052 (Fla.Dist.Ct.App.1979) (many of the matters sought are not subject to discovery as a "matter of public policy"); *Dade County Medical Association v. Hlis,* 372 So.2d 117, 121 (Fla.Dist.Ct.App.1979) (court cautions that it is not establishing a general common law privilege, but nevertheless, protects records from discovery in view of an "overwhelming public interest in maintaining the confidentiality of such records"); *Oviatt v. Archbishop Bergan Mercy Hospital,* 191 Neb. 224, 226, 214 N.W.2d 490, 492 (1974) (discovery of peer review doc-

uments denied on the basis of "public interest in the improvement of the care and treatment of hospital patients").

We decide the merits of the hospital's claim of a policy-based peer review privilege by weighing the importance of discovery against the harm such discovery might cause. Like the district court, we strike the balance in favor of allowing production of the documents in this case.

We have frequenty recognized that litigants should "be given wide access to sources of relevant information." *See, e.g., State ex. rel. Shanahan v. Iowa District Court*, 356 N.W.2d 523, 531 (Iowa 1984) (citing several Iowa cases balancing litigants' need for information against competing interests urging confidentiality); *Chidester v. Needles*, 353 N.W.2d 849, 853–54 (Iowa 1984) (privacy interest of medical clinic's patients must yield to State's interest in founding criminal charges on accurate information). Moreover, basic fairness suggests that the manufacturer should have access to information generated by hospital investigative committees when, reversing roles, the hospital would seem to have the right to discover similar information generated by manufacturer-created investigative committees.

Juxtaposed against these factors favoring discovery are several policy factors which have been emphasized by the cases adopting a peer review privilege. The *Bredice* case clearly articulated these public interest factors:

> Confidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.

50 F.R.D. at 250.

We have referred above to several cases, like *Bredice*, where courts found that the need for confidentiality in peer review outweighed the need for discovery. Other courts have played down the *Bredice* policy factors and upheld discovery of peer review documents. *See, e.g., State ex. rel. Chandra v. Sprinkle*, 678 S.W.2d at 807 ("It would appear that the public interest lies with discoverability and not with confidentiality of these [peer review] records."); *Davison*, 75 Wis.2d at 204, 248 N.W.2d at 441 ("the public policy decision ... is not so clear" as to uphold claim of confidentiality for peer review records; discovery allowed).

At the hospital's urging we have weighed the competing policy factors involving peer review confidentiality by applying a four-factor test borrowed from Wigmore and recently applied in *AgriVest Partnership*, 373 N.W.2d at 485 (applying four-factor test in deciding that minutes of board of directors of a federal corporation not privileged but discoverable). Those four factors were:

> (1) The communications must originate in a *confidence* that they will not be disclosed.

> (2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

> (3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*

> (4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation.

*Id.* (emphasis in original).

The first three factors are at least nominally satisfied by the importance of peer review in maintaining and improving the quality of services performed by medical professionals. But the critical fourth factor—the balancing of harm against ben-

efit—weighs heavily in favor of disclosure. On the benefit side of the scale, the manufacturer should ordinarily be allowed to obtain whatever relevant information the hospital has in its documents that have been withheld, unless serious harm will result. On the other side of the scale, however, there simply is no detrimental harm which disclosure will now cause. We may reject the hospital's request for a judicially-created privilege without harming peer review in any way. The legislature has now cloaked peer review committees throughout our state with fully adequate privacy, a complete statutory privilege applicable to future peer review proceedings. With the need for peer review confidentiality satisfied by statute, we need not in this case restrict this manufacturer's access to relevant information held by the hospital.

The district court's decision to deny the hospital a privilege and allow the manufacturer to inspect the requested peer review materials represents a considered and thoughtful balancing of the factors important to a determination of confidentiality. The district court decision also represents a thoughtful exercise of discretion. That court did not abuse its discretion in determining that the records sought by the manufacturer are not subject to a common law or a public policy privilege in Iowa.

AFFIRMED.