# IN THE COURT OF APPEALS OF IOWA

No. 15-0824
Filed May 11, 2016

**GOLDEN ENTERPRISES, LLC**
**and KATHRYN LEANN GOLDEN,**
    Plaintiffs-Appellants,

**vs.**

**IOWA DISTRICT COURT FOR**
**POLK COUNTY,**
    Defendant-Appellee.
_____

Certiorari to the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

A judgment debtor's wife and the couple's limited liability company challenge the district court's ruling denying their request for a protective order and their motion to quash subpoenas issued by the creditor bank in furtherance of its collection efforts. **WRIT ANNULLED.**

Matthew E. Laughlin, Sarah E. Crane, and Margaret A. Hanson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellants.

Jonathan E. Kramer of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Steven Golden is the judgment debtor in a foreclosure action by First American Bank. To advance its collection efforts, the bank issued subpoenas for records and testimony from the debtor's wife, Kathryn Leann Golden (Leann), and the couple's company, Golden Enterprises, LLC (Golden Enterprises). The wife and company unsuccessfully moved to quash the subpoenas. In this certiorari proceeding, we are asked to consider whether the subpoenas are unduly burdensome or seek irrelevant information. Recognizing the wide discretion vested in the district court regarding discovery matters, we decline to grant the relief requested by Leann and Golden Enterprises.

## I. Facts and Prior Proceedings

Leann is the wife and business partner of Steven Golden, who took out loans—totaling approximately $2,679,000—from First American to purchase and operate two car washes. Steven was the limited personal guarantor of the notes. First American brought a successful foreclosure action against Steven, and judgment was entered on July 9, 2014. We affirmed the bank's judgment on appeal. *See First Am. Bank v. Urbandale Laser Wash, L.L.C.*, 874 N.W.2d 650, 659 (Iowa Ct. App. 2015).

The bank foreclosed on the subject properties, resulting in partial satisfaction of the judgment. Seeking to recover the remaining $1.5 million in judgment debt, the bank filed motions seeking a judgment creditor examination of Steven and further discovery from Leann and Golden Enterprises, as well as their accountant. *See* Iowa Code §§ 630.1, .5 (2013) (proceedings auxiliary to

execution). Steven resisted the bank's motions. On January 12, 2015, the district court granted the bank's motion to take examinations auxiliary to execution and allowed the bank to "request production of documents to be provided prior to or at the examinations."

To enforce its judgment, on January 30, 2015, First American served eight subpoenas seeking depositions and financial documents from several entities and individuals, including Steven, his accountant Joseph Coco and the accounting firm Coco & Ermels, P.C.,[1] Leann, and Golden Enterprises. Along with other information, the subpoenas sought disclosure of any asset possessed by Leann or Golden Enterprises with a value over $500. In addition, the subpoenas requested:

> All records relating to the income, expenses, assets, liabilities, transfers, plans, or statements of or to Steven, [the two judgment-debtor companies], or [Leann] from January 1, 2012 to the present date.
> All records relating to the management of [Golden Enterprises], and all agreements between or among owners, officers, managers, or others relating to management of said company at any time.
> All electronic accounting records of [Golden Enterprises,] Steven [and/or Leann].
> All agreements governing all employee benefit programs of Golden Enterprises [ ].
> All certificates of stock issued and outstanding of [Golden Enterprises] and all records relating to changes of ownership or

---

[1] In the appellants' brief, counsel for Leann and Golden Enterprises purport to challenge both the subpoenas issued to them, as well as those issued to Coco and his accounting firm. In the appellee's brief, counsel for the bank asserts Coco and his firm have provided the bank with documents and "no further case or controversy" exists regarding those parties. The appellants did not file a reply brief to controvert that assertion. Normally on appeal we do not consider matters outside the record, but we entertain an exception on claims of mootness. *See Clarke Cty. Reservoir Comm'n v. Robins*, 862 N.W.2d 166, 170 n.3 (Iowa 2015). Based on the bank's uncontroverted assertion, we find the issue is moot as to the subpoenas issued to Coco and the accounting firm.

ownership rights associated with the stock issued and outstanding of [Golden Enterprises]

On February 12, 2015, Leann and Golden Enterprises moved to quash the subpoenas and sought a protective order,[2] alleging the bank's document and deposition subpoenas were "overly broad, unduly burdensome, and [sought] irrelevant discovery from and regarding non-parties and non-debtors." The Goldens' counsel[3] stated he had entered negotiations with the bank's counsel to narrow the bank's requests but felt compelled to take action due to the deadlines in the subpoenas.

First American filed a resistance to the motion to quash its subpoenas, contending the objectors were "insiders" as that term is defined in Iowa Code section 684.1(7)(a) (fraudulent transfers), and thus "by public policy have been determined to have a relationship with the debtor," Steven, which relationship makes Leann and Golden Enterprises "more likely to be recipients of fraudulent transfers or other blurring of property ownership such that they are not entitled to the same presumption of independence from [Steven] shown true third-parties." The resistance also asserted the attorneys for all parties had spoken about a potential protective order. According to the resistance, the bank's counsel had "stipulated to a protective order preventing redisclosure of information to be produced that is confidential in nature, and explaining that information regarding both [Leann's and Golden Enterprises'] assets and income are necessary

---

[2] The combined motion was also filed on behalf of Steven and the two debtor corporations and argued the deposition dates were inconvenient and more time was required to respond.

[3] The Davis Brown Law Firm represented all of the objectors.

because they are intertwined with [Steven's] personal assets, expenses, income and debts."

The district court held a hearing on March 25, 2015.[4] At the hearing, First American offered exhibits concerning the financial condition of Steven and Leann Golden. The bank alleges the exhibits established that during the foreclosure litigation, Steven and Leann took actions to modify their financial arrangements. For instance, in November 2014, they converted Golden Enterprises, Ltd., from an Iowa corporation governed by Iowa Code chapter 490 into Golden Enterprises, LLC, a limited liability company governed by chapter 489. After the conversion, each spouse owned a fifty-percent membership interest. In addition, the couple reduced Steven's salary from Golden Enterprises, while increasing the salary paid to Leann. The bank also offered email exchanges between the parties' attorneys showing ongoing discussions about narrowing the subpoenas' scope.

On April 1, 2015, the Goldens' counsel filed objections to all of the bank's exhibits. The objections generally asserted the financial information sought from Leann was not relevant because she was not a party to the foreclosure litigation and any relevant information could be gleaned from Steven's debtor examination.

---

[4] The bank points out "the appellants did not present this court with the transcript" of the March 25 hearing. It is true the appellant is obliged to order a transcript of the parts of the proceedings relevant to the finding or conclusion challenged on appeal. Iowa R. App. 6.803(1). But the appellee is obliged to order a transcript of any additional parts of the proceedings it deems necessary, and any disputes regarding transcription are to be settled in the district court. Iowa R. App. P. 6.805. It does not appear the appellee bank disputed the appellant's failure to order the March 25 hearing transcript.

In a post-hearing brief, First American discussed proceedings auxiliary to execution on a debt under chapter 630, as well as equitable remedies for judgment creditors predating those statutory provisions. The bank requested "discovery of assets, both by records and testimony, from persons known to have benefitted from transfers made by [Steven] since the start of the litigation, or with knowledge of such transfers, as set forth in the oral record"

In a post-hearing response, the Goldens' counsel argued:

> Leann is neither a party to this lawsuit nor a debtor of the [bank], and therefore, [the bank] has no basis for its request to compel Leann to submit to a Judgment Debtor Examination and/or produce documents concerning assets only owned by her. Defendants do not dispute that [the bank] may examine [Steven] regarding his assets, including transfer of any assets to Leann. Defendants also do not dispute that [the bank] may examine Leann regarding transfers to or from [Steven]. Although, where [the bank] examines Leann regarding transfers from [Steven], the inquiry should be whether [Steven] liquidated his assets, and if he did so, whether he received "reasonably equivalent value" in a transfer to Leann. *See* Iowa Code § 684.5 [(transfers fraudulent as to present creditors)].

In a ruling issued April 15, 2015, the district court reiterated that the bank could proceed with a judgment debtor examination of Steven, could "examine other witnesses at the same time," and "could request production of documents prior to or at the examinations." The court also confirmed the bank's exhibits were admitted at the hearing. In regard to the objectors-defendants' motion to quash the bank's subpoenas, the court noted: "Defendants agree that the deponents can provide information about assets held by or transferred by [Steven] but claim it would be unduly burdensome to provide information about assets solely held by [Leann] and Golden Enterprises. However, to prevent such

questions during the examination would be overly restrictive." The court reasoned:

> [Leann] may hold some assets jointly and some on her own. The bank can only determine what assets might be available for execution by asking questions about ownership. Not only will the bank be able to learn about assets that are jointly held and any questionable transfers, but the bank can determine whether any assets have been solely owned by [Leann] to avoid any inappropriate execution.

The court applied the same rationale to Golden Enterprises:

> It may be that assets held by Golden Enterprises are not available for execution to pay the judgment against [Steven] in this case. However, the bank may not be able to make that determination without asking the questions and obtaining records to show ownership and transfer of assets.

Leann and Golden Enterprises filed a petition for writ of certiorari to challenge the district court's denial of their motions to quash and requests for protective orders. The Iowa Supreme Court granted their petition and stayed the district court's April 15 order, but "only to the extent it requires non-parties [Leann and Golden Enterprises] to provide discovery and testimony regarding their individual assets." After briefing, the supreme court transferred the appeal to this court.

## II.     Scope and Standards of Review

On writ of certiorari, we review for errors at law; "we may examine only the jurisdiction of the district court and the legality of its actions." *Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 66 (Iowa 2010) (citation omitted). An abuse of discretion may constitute an illegality. *Parrish v. Denato*, 262 N.W.2d 281, 286 (Iowa 1978).

This certiorari action involves the rules of discovery. Courts liberally construe those rules to effectuate disclosure of all relevant and material information to the parties. *Hutchinson v. Smith Labs., Inc.*, 392 N.W.2d 139, 140-41 (Iowa 1986). The district court enjoys wide discretion in its rulings on discovery issues, and we will reverse only when an abuse of discretion is found. *Id.* at 141; *see also Comes v. Microsoft Corp.*, 775 N.W.2d 302, 305 (Iowa 2009) (discussing district court's "wide discretion" in deciding whether to enter protective order and noting "a protective order is not entered lightly"). "Abuse of discretion may be shown . . . where the decision is grounded on reasons that are clearly untenable or unreasonable. A ground or reason is untenable . . . when it is based on an erroneous application of the law." *Office of Citizens' Aide/Ombudsman v. Edwards*, 825 N.W.2d 8, 14 (Iowa 2012) (citations and internal quotations omitted).

## III. Summary of Applicable Law

Iowa Code chapter 630 sets out proceedings auxiliary to execution to assist a judgment creditor in discovering assets of the judgment debtor that may be applied to satisfy the judgment. Section 630.1 provides for the appearance and examination of the judgment debtor if the execution is not satisfied. Under section 630.5, witnesses may be required by the court to appear and testify at any proceedings under the chapter. The discovery available under section 630.5 is disputed in this case.

Generally, discovery disputes are governed by Iowa Rules of Civil Procedure 1.501, 1.504, and 1.1701. The first provision discusses discovery

methods and directs that "rules for providing discovery should be liberally construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding and to provide the parties with access to all relevant facts." Iowa R. Civ. P. 1.501(2). Under the second rule, the district court may grant a protective order, upon the showing of good cause, and "[m]ay make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Iowa R. Civ. P. 1.504(1)(a). The third rule illuminates the requirements for issuing subpoenas. Iowa R. Civ. P. 1.1701. The party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *See* Iowa R. Civ. P. 1.1701(4)(a).

"A protective order precluding discovery is the most restrictive type of protective order." *Berg v. Des Moines Gen. Hosp. Co.*, 456 N.W.2d 173, 177 (Iowa 1990). A claim that complying with a subpoena would result in undue burden and expense is generally not sufficient to preclude discovery of relevant materials. *Id.* But a showing of burdensomeness may be a basis for limiting discovery. *Id.* "By limiting discovery, the interests of both parties may be accommodated: the requesting party is allowed some access to the materials and the burden on the resisting party is minimized." *Id.* The party seeking a protective order has the burden to show good cause for its issuance. *Pollock v. Deere & Co.*, 282 N.W.2d 735, 739 (Iowa 1979).

**IV.      Analysis**

Leann and Golden Enterprises argue the district court abused its discretion in failing to quash the subpoenas or enter a protective order because the bank is seeking irrelevant information from third parties and their provision of such information to the bank would be unduly burdensome.  Leann argues the subpoenas were not narrowly drawn and inappropriately seek her personal financial information not related to the judgment against Steven.  Golden Enterprises argues First American is asking for documents from the company irrelevant to the foreclosure, including information regarding employee benefits, employee stock information, and personal employee information.

In response, First American admits the subpoenas issued to Leann and Golden Enterprises were broad in scope but contends "such subpoenas do not reflect the status of the information requested at the time of the hearing on March 25, 2015 resulting in the ruling of the court."  At the March 25 hearing, the bank's counsel offered, and the court admitted, an exhibit showing correspondence between the attorneys regarding negotiations to narrow the scope of the requested information.  On February 24, 2015, counsel for the bank sent an email indicating his client would "need" the following information

- electronic data and tax returns for Golden Enterprises and [Steven], and any other entity run by [Steven], if any.
- information from [Steven] as to all assets and transfers for the last five years.
- information from [Leann] as to all joint assets or as to entities or lines of business she has where Steven participates, also any agreements between Steven and Leann that affect either of their assets or liabilities.

On February 27, counsel for the Goldens sent an email with a counter proposal as follows:

- tax returns for [Steven] and Golden Enterprises from 2012 and a current Financial Statement for Golden Enterprises.
- a list of assets owned by [Steven] and transfers by Steven over the last three years.
- a list of transfers Leann [ ] has received from [Steven] for the last three years.
- a list of joint assets owned by Leann [and Steven].

When the bank did not agree to the additional restrictions, the Goldens' counsel declined to present his clients for the examination scheduled for March 11, 2015.

For their part, Leann and Golden Enterprises contend the bank is on a "fishing expedition" for confidential financial information and has been "unwilling to limit its subpoenas." Their accusation that the bank has been unwilling to limit the scope of its request is belied by the bank's exhibit showing the attorneys' email exchanges. Further, in the motion to quash, the Goldens' attorney specifically acknowledged that negotiations to narrow the subpoenas had begun.

But our ability to assess the scope of the requested information is hindered by the parties' failure to order the transcript of the March 25 hearing. While the bank's February 24, 2015 email offers to revise and narrow its initial request, the district court's ruling addresses the claim that it would be unduly burdensome to "provide information about assets solely held by [Leann] and Golden Enterprises." Moreover, in its resistance to the petition for certiorari, the bank argued the district court was correct in ruling "although assets" of Leann and Golden Enterprises "may not ultimately be available for execution, understanding the parties' finances could be necessary to determine whether

and to what extent such property is protect at to determine the exempt status of assets." Because the transcript is not available, we must review the district court's denial of the motion to quash the subpoenas as the subpoenas appear in the record, as well as reviewing its refusal to issue a protective order based on the bank's original requests for information.[5]

Even considering the scope of the original discovery requests, we find no abuse of discretion in the district court's ruling. *See Hutchinson*, 392 N.W.2d at 141 (noting in discovery disputes, "[a]n abuse of discretion is rarely found"). The district court correctly decided the information requested was relevant to the bank's ability to determine what assets would be available for execution and what assets would be inappropriate for execution because they were solely held by Leann or Golden Enterprises. *See King v. Wells*, 77 N.W. 338, 339-40 (Iowa 1898) (recognizing husband was not in debt when conveyance of property to wife was made and "nothing in the record" supports a "presumption" the conveyance "was designed to hinder, delay, or in any manner defraud subsequent creditors"); *Hamilton v. Lightner*, 5 N.W. 603, 605-06 (Iowa 1880) (rejecting as fraudulent a husband-debtor's "device of making the wife a debtor for money loaned by the husband, and upon this transaction basing her claim of title to the property"). As the district court aptly observed: "The bank can only determine what assets might be available for execution by asking questions about ownership." *See Ticonic Bank v. Harvey*, 16 Iowa 141, 146-48 (Iowa 1864) (stating land purchased in

---

[5] Our conclusion on this point should not be read as discouraging the bank, in future proceedings, from abiding by the more narrow "status of the information [it had] requested at the time of the hearing on March 25, 2015" as set out in its appellee's brief.

wife's name only when husband already owed debt to creditor might be available for creditor's execution on husband's debts). We find nothing in our statutes or rules of civil procedure that would prohibit a judgment creditor in the situation of First American from seeking pertinent information concerning the financial condition and assets of the debtor's spouse or the debtor's company—especially where the debtor and his spouse have restructured their joint company, Golden Enterprises, during the course of the underlying foreclosure action.

On the issue of undue burden, the bank argues Leann and Golden Enterprises did not present evidence regarding the cost or difficulty of producing their financial information so as to entitle them to a protective order. The bank claims "much of the requested information is readily available by [Golden Enterprises] in electronic format that could be put onto a flash drive; and that [First American] would agree to a protective order that prevented redisclosure, should that be sought" by Golden Enterprises. We agree Leann and Golden Enterprises have not carried their burden to show good cause for issuance of a protective order. *See Pollock*, 282 N.W.2d at 739 (finding no undue burden even when subpoena recipient Deere offered evidence that production of requested documents would take months of screening materials and scanning microfiche).

Leann and Golden Enterprises argue their situation is similar to the discovery dispute in a malpractice case. *See Berg*, 456 N.W.2d at 175. Plaintiff Berg sought medical records from the hospital and doctor for all patients for whom the doctor had ordered certain heart procedures during the previous five years. *Id.* The Iowa Supreme Court found the district court did not abuse its

discretion in finding Berg's discovery request too burdensome because it required the hospital and doctor to examine thousands of patient files. *Id.* at 177. The court also found the discovery would have compromised the confidentiality of the medical files to some extent. *Id.*

This case is distinguishable from *Berg*. As discussed above, Leann and Golden Enterprises do not offer any specific evidence concerning the time or expense their compliance would require. *Compare with id.* (finding protective order is appropriate if "nature and complexity of the inquiry shows compliance with the discovery request would require an unreasonable amount of time and an unreasonable expenditure of money"). Moreover, the bank's request obviously does not involve third-party, private medical records but rather seeks relevant financial information from the debtor's spouse and the debtor's company, both of which have had at least some assets intermingled with those of the debtor.

Leann and Golden Enterprises urge us to look to Federal Rule of Civil Procedure 69(a)(2)[6] for guidance in deciding this dispute because Iowa law is underdeveloped on questions of discovery in furtherance of enforcing judgments. We agree neither party has pointed to case law directly dealing with discovery in this post-judgment context. We also agree our supreme court has looked to federal rules as instructive, even if an inexact analogy, to our own rules. *See Cooksey v. Cargill Meat Sols. Corp.*, 831 N.W.2d 94, 102 (Iowa 2013). But the

---

[6] "In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person—including the judgment debtor—in the manner provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). *See State Res. Corp. v. Younger*, No. 08-06041-CV-SJ-DGK, 2014 WL 912369, at *2 (W.D. Mo. Mar. 10, 2014) (stating Rule 69(a)(2) relates only to post-judgment discovery).

supreme court has not found a comparison to federal rules helpful when those rules reach an issue our law does not. *See Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 515 n.4 (Iowa 2012). The parties do not point to any Iowa rule of civil procedure analogous to Federal Rule 69(a). Accordingly, we do not find federal case law interpreting that rule to be particularly instructive.

But even if we tap the federal cases for guidance, we do not find them fully supportive of Leann's position. For instance, the Eighth Circuit has interpreted Rule 69(a) as giving broad discovery rights to a judgment creditor seeking financial information from an individual third party, holding the creditor had "good reason to want to know about the relationship" between the judgment-debtor corporation and a corporate officer. *See Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998) (stressing "the presumption should be in favor of full discovery of any matters arguably related to Credit Lyonnais's efforts to trace SGC assets and otherwise to enforce its judgment" and opining "[m]atters relating to [the corporate officer's] personal finances seem to us—subject to such further reasonable inquiry as the district court may think proper—to be proper subjects of discovery").

On the record before us and under Iowa's tradition of liberally interpreting our discovery rules, we cannot say the district court abused its wide discretion in declining to quash the bank's subpoenas or in denying the request for a protective order. While additional fine tuning may be necessary as the proceedings auxiliary to execution move forward, we agree with the district court's conclusion that First American should be allowed to obtain the requested

information concerning the economic circumstances of the judgment debtor's spouse and his limited liability company as a first step in determining assets potentially subject to execution. Given the intertwined financial operations of Steven, Leann, and Golden Enterprises, the district court did not abuse its discretion in finding the subpoenas requested relevant information and the objectors did not show compliance would be unduly burdensome.

**WRIT ANNULLED.**