Roman N. LAMBERTO, Plaintiff,

v.

Hon. Thomas BOWN, Judge of the Fifth
Judicial District, Defendant.

No. 67036.

Supreme Court of Iowa.

Nov. 24, 1982.

Barbara M. Mack and Michael Giudicessi, Des Moines, for plaintiff.

Edward W. Dailey and David A. Hirsch of Edward W. Dailey Law Offices, P.C., Burlington, for defendant.

LARSON, Justice.

Roman Nicholas Lamberto, a newspaper reporter, wrote a story about a suit filed by Donald Gartin against Dan McAllister. During McAllister's deposition of him, Lamberto refused to relate details of conversations with Gartin and to produce documents demanded by McAllister, claiming a first amendment privilege as recognized in *Winegard v. Oxberger*, 258 N.W.2d 847 (Iowa 1977). The deposition was continued to permit McAllister to request an order compelling discovery, Iowa R.Civ.P. 134(a)(2). The court ruled that the qualified reporter's privilege of *Winegard* was inapplicable. Lamberto requested a protective order and again refused to answer the questions. McAllister's counsel persisted in his demand. The court ruled Lamberto must testify, or at least allow in-camera consideration of the testimony and documents, or risk punishment for contempt. He again declined, and the court found him in contempt. Lamberto was sentenced to jail pending his compliance. The court delayed issuance of the mittimus, however, to allow Lamberto to seek review of the order. Lamberto's petition for a writ of certiorari was granted, and execution of the mittimus was stayed. We conclude the writ should be sustained.

Gartin's suit against McAllister was filed on December 3, 1977, alleging invasion of privacy, slander, and assorted "unlawful, criminal, intentional and malicious acts," and demanding $6,220,000 in damages. On December 13, 1977, Lamberto's article, captioned "Lawyer Files Suit Against Bank President," was published in the Des Moines Register summarizing the contents of Gartin's petition. The article also related that Gartin had been convicted of perjury the previous year and that he had been acquitted of a charge of subornation of perjury and attempted subornation of perjury in connection with an earlier investigation into a car theft ring involving a client of Gartin. No claim was made that Lamberto's article was inaccurate; McAllister simply contended he must be permitted to depose Lamberto regarding prior conversations with Gartin in order to prepare his defense. Specifically, he proposed to use the information to "confirm or disconfirm" Gartin's statements about the conversations. He also proposed to establish that Gartin, by discussing the matters with Lamberto, had himself disseminated information about his problems with McAllister. Any resulting damages to Gartin were therefore self-inflicted, according to him. McAllister further alleged that the elements required by *Winegard* for overriding a claim of first amendment privilege were present: the evidence could not be obtained from other sources, that it was essential to his defense, and that his defense was not frivolous. 258 N.W.2d at 852.

In ruling on these matters the district court summarized its findings of fact without detailing them:

> The defenses pled by . . . McAllister to . . . Gartin's petition are not patently frivolous. At least some of the discovery sought by . . . McAllister from [the plaintiff] is necessary or critical to those defenses.
>
> . . . McAllister has exhausted other reasonable means available by which information sought from [the plaintiff] could have been obtained. . . . McAllister has reasonably exercised and exhausted other plausible avenues of information.

The duty of every person to give evidence is one of long standing. It has been said that

> [w]ere the Prince of Wales, the Archbishop of Canterbury, and the Lord High Chancellor, to be passing by in the same coach while a chimney-sweeper and a barrow-woman were in dispute about a half-

pennyworth of apples, and the chimney-sweeper or the barrow-woman were to think proper to call upon them for their evidence, could they refuse it? No, most certainly.

Bentham, *Draught for the Organisation of Judicial Establishments* (1827), 4 The Works of Jeremy Bentham 320 (Bowring ed. 1843). The principle that a litigant has a "right to every man's evidence," 8 J. Wigmore, § 2192 at 70 (McNaughton rev. 1961) has also been a principle consistently recognized by the Supreme Court, *see, e.g., Branzburg v. Hayes,* 408 U.S. 665, 668, 92 S.Ct. 2646, 2650, 33 L.Ed.2d 626, 644 (1972); *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1064 (1974), and by this court, *Winegard,* 258 N.W.2d at 850. Our rules provide that information is discoverable, even if it is inadmissible, "if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Iowa R.Civ.P. 122(a).

The need for every person's evidence is so compelling, in fact, that even those privileges rooted in the federal constitution must give way in some circumstances, *Herbert v. Lando,* 441 U.S. 153, 175, 99 S.Ct. 1635, 1648, 60 L.Ed.2d 115, 133 (1979); and a narrow application of privilege is advocated. *See* 8 Wigmore, *supra* § 2192, at 73 ("The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion of these [testimonial] privileges. They should be recognized only within the narrowest limits required by principle.").

While the principle that a litigant is entitled to every person's evidence is well established, courts have also shown great solicitude for first amendment rights. *See, e.g., First National Bank of Boston v. Bellotti,* 435 U.S. 765, 781, 98 S.Ct. 1407, 1418, 55 L.Ed.2d 707, 721 (1978) ("the press cases emphasize the special and constitutionally recognized role of that institution in informing and educating the public, offering criticism, and providing a forum for discussion and debate."); *Time, Inc. v. Hill,* 385 U.S. 374, 389, 87 S.Ct. 534, 543, 17 L.Ed.2d 456, 468 (1967) (guarantees of the first amendment "are not for the benefit of the press so much as for the benefit of all of us. A broadly defined freedom of the press assures the maintenance of our political system and an open society.").

When confronted with this delicate weighing process, courts have held the constitutional privilege may be overridden by a witness's duty to testify, but only if the need for the evidence is "compelling" or "paramount." *See, e.g., Branzburg,* 408 U.S. at 680, 92 S.Ct. at 2656, 33 L.Ed.2d at 639; *N.A.A.C.P. v. Button,* 371 U.S. 415, 439, 83 S.Ct. 328, 341, 9 L.Ed.2d 405, 422 (1963); *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 394, 89 L.Ed. 430, 440 (1945); *Sweezy v. New Hampshire,* 354 U.S. 234, 265, 77 S.Ct. 1203, 1219, 1 L.Ed.2d 1311, 1333 (1957) (Frankfurter, J., concurring); *Winegard,* 258 N.W.2d at 850; *cf. Nixon,* 418 U.S. at 713, 94 S.Ct. at 3109–10, 41 L.Ed.2d at 1067 (executive privilege overridden by showing evidence "essential to the justice of the [pending criminal] case.").

Concern for the fair administration of criminal justice, *Nixon,* 418 U.S. at 711, 94 S.Ct. at 3109, 41 L.Ed.2d at 1066; *Re Farber,* 78 N.J. 259, 273, 394 A.2d 330, 337 *cert. denied,* 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978), and a state's interest in well-founded grand jury inquiries, *Branzburg,* 408 U.S. at 685, 92 S.Ct. at 2658, 33 L.Ed.2d at 642, have usually been held to be needs compelling enough to override a claim of testimonial privilege in criminal matters. Similarly, in civil cases where a reporter asserting the privilege is a party to the lawsuit and his actions, motivations or thought processes are integral elements of the claim, disclosure is often compelled. The most notable examples are libel cases. *See, e.g., Herbert,* 441 U.S. at 155–58, 99 S.Ct. at 1638–39, 60 L.Ed.2d 121–23; *Carey v. Hume,* 492 F.2d 631, 636–39 (D.C.Cir.), *cert. denied,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *Garland v. Torre,* 259 F.2d 545, 549 (2d Cir.), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958). *See also Zerilli v. Smith,* 656 F.2d 705, 712 (D.C. Cir.1981) (cases applying and denying privilege cataloged).

In *Winegard* we discussed the criteria for subordinating a first-amendment privilege to a compelling state interest in obtaining the evidence:

(1) That the information is necessary or critical to the involved cause of action or defense pled. . . . [It] should go to the heart of the questioner's claim.

(2) That other reasonable means available by which to obtain the information sought have been exhausted.

(3) That it does not appear from the record the action or defense is patently frivolous.

*Winegard,* 258 N.W.2d at 852.

### I. *Winegard Criteria.*

Lamberto does not appear to rely upon a failure of McAllister to show his defense was not "patently frivolous," nor does he claim it was in fact frivolous. He does, however, strenuously dispute the showing of the necessity and exhaustion elements.

■ The requirement of a separate showing that a claim or defense is not patently frivolous appears to be unique to *Winegard;* other courts discussing it have apparently done so only in determining whether the evidence was necessary to the case. *See, e.g., Carey,* 492 F.2d at 634–35; *Bursey v. United States,* 466 F.2d 1059, 1083 (9th Cir. 1972); *Cervantes v. Time, Inc.,* 464 F.2d 986, 992 (8th Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973). We believe a showing that a claim or defense is not patently frivolous is duplicative and unnecessary in view of the other elements of *Winegard,* and we therefore eliminate it as a separate requirement. Having done so, we discuss the remaining criteria of necessity and exhaustion.

■ A. *The "necessity" requirement.* To override a privilege, the need for the evidence must be substantial; an individual's constitutional rights cannot be subordinated by a "remote, shadowy threat" to a countervailing state interest. *Sweezy,* 354 U.S. at 265, 77 S.Ct. at 1219, L.Ed.2d at 1333. *See N.A.A.C.P. v. Alabama,* 357 U.S. 449, 464–66, 78 S.Ct. 1163, 1174, 2 L.Ed.2d 1488, 1501–02 (1958) (disclosure of an N.A.A.C.P. membership list denied despite the allegation it was necessary to determine whether N.A.A.C.P. was conducting intrastate business in violation of Alabama's law); *Winegard,* 258 N.W.2d at 852.

Other cases say the evidence must "go to the heart" of the litigant's case, *Carey,* 492 F.2d at 636; *Garland,* 259 F.2d at 550; *Baker v. F & F Investment,* 470 F.2d 778, 783 (2d Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *Winegard,* 258 N.W.2d at 852; *see* Note, *Reporters and Their Sources: The Constitutional Right to a Confidential Relationship,* 80 Yale L.J. 317, 322–23 (1970).

■ B. *The exhaustion requirement.* A compelling interest in obtaining the information involves more than a showing of relevancy and importance; it requires a showing that other, less obtrusive, means of establishing a fact are unavailable. *Winegard,* 258 N.W.2d at 852; *Carey,* 492 F.2d at 638.

One of the reasons for requiring a strict showing of necessity is to avoid fishing expeditions by litigants who, in effect, seek to use reporters as investigative tools. *See Silkwood v. Kerr-McGee Corp.,* 563 F.2d 433, 438 (10th Cir.1977); *Farber,* 78 N.J. at 277, 394 A.2d at 338–39. In other words, "compelling disclosure from the newsman himself [should be] the end, and not the beginning of the inquiry." *Carey,* 492 F.2d at 638.

### II. *The Procedure.*

The district court in this case proposed an in-camera examination of the disputed evidence in order to judge its relevance—a procedure "borne of a paradox—the need to see evidence in order to determine whether the evidence can be seen." *Farber,* 78 N.J. at 303, 394 A.2d at 352 (dissenting opinion).

■ Despite the utility of the in-camera inspection, it nevertheless partially destroys the privilege, *see Environmental Protection Agency v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 838, 35 L.Ed.2d 119, 135 (1973). Therefore, when a constitutional privilege is as-

serted, a threshold showing of the necessary elements of a compelling state interest should be required. *See Nixon,* 418 U.S. at 713, 94 S.Ct. at 3110, 41 L.Ed.2d at 1067; *Farber,* 78 N.J. at 276, 394 A.2d at 338.

▮ While *Winegard* is silent as to the procedure to be used in such cases, *Farber* established a procedure under New Jersey's media shield statute which is appropriate in assessing a constitutional claim of privilege as we have here. Under *Farber,* a determination must be made whether the resisting party falls within the class of persons qualifying for the privilege. If that preliminary showing is made, the material is to be treated as presumptively privileged, and the burden falls on the requesting party to satisfy the court by a preponderance of the evidence, including all reasonable inferences, that (1) there is a probability or likelihood that the evidence is necessary and (2) it cannot be secured from any less obtrusive source. If the court is so satisfied, an in-camera examination of the evidence should be ordered. *Id.* at 276, 394 A.2d at 338. The in-camera determination should then be made based upon an examination of the evidence in question, and any other evidence presented, whether the evidence is necessary to the claim or defense, and whether it would probably be admissible at trial. If these criteria are met, the requesting party should be permitted to use the evidence. *Id.* at 275, 394 A.2d at 338. The Supreme Court has approved a similar procedure in assessing a claim of executive privilege, *Nixon,* 418 U.S. at 713, 94 S.Ct. at 3110, 41 L.Ed.2d at 1067, and we approve it here.

III. *Principles Applied.*

▮ The defendant judge asserts that a finding was made of compelling need and that this court is bound by that finding if it is supported by any substantial evidence. Iowa R.App.P. 14(f)(1). We disagree; evaluation of "compelling need" involves a weighing of competing interests and a determination of relevancy. *See* C. McCormick, *Handbook of the Law of Evidence,* § 77, at 159 (Cleary ed. 1972). These are matters of law, not fact, and the district court's conclusions do not bind us.

In its discovery order, the district court held that the *Winegard* test had been satisfied, and stated:

The role Donald E. Gartin played in the publication of matters which he complains of could be crucial and critical to the defense. To what extent did Donald E. Gartin, through [the plaintiff], cause the damages of which he complains[?] His claims of invasion of privacy must be subject to any defense predicated on facts known to [the Plaintiff] and which facts Gartin [caused to be] published.

There is a serious question, however, whether publication is even an issue in the case in its present posture. The defamation claim originally asserted in the petition was dismissed by Gartin, who now claims damages only for intrusion upon his solitude or seclusion.

▮ In *Winegard v. Larsen,* 260 N.W.2d 816, 822 (Iowa 1977), the court adopted section 652B of the *Restatement:*

Intrusion upon Seclusion

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Restatement (Second) of Torts* § 652B, at 378 (1977). Publication of information obtained by such intrusion is not a necessary element of the tort. *Id.,* comment *b,* at 378–79. Even if Lamberto's testimony established that Gartin himself had caused dissemination of the damaging information, this is of doubtful relevancy to the case.

McAllister also argues that he needs Lamberto's testimony to "confirm or disconfirm" Gartin's version of the conversations. Testimony to be used solely for testing credibility can scarcely be said to go to the "heart" of the case, *Winegard,* 258 N.W.2d at 852, and we are aware of no cases which so hold. *See Nixon,* 418 U.S. at 702, 94

**310**

S.Ct. at 3104, 41 L.Ed.2d at 1060 (need for impeachment evidence insufficient to require production before trial).

We conclude McAllister failed to demonstrate the compelling need for the evidence. The threshold showing necessary to trigger an in-camera examination of the evidence was therefore not met, and the court erred in ordering discovery of Lamberto.

Because we have resolved the case on the basis that McAllister failed to make a threshold showing of necessity, it is unnecessary to resolve the issue of exhaustion.

We conclude the order for compelled discovery was entered erroneously and that the writ of certiorari should be sustained.

WRIT SUSTAINED.