**James P. BELL, Individually and as Administrator of the Estate of William B. Argumedo, Deceased; Mary A. Bell; James P. Bell, Father and Next Best Friend of Audra Bell, A Minor; Richard Argumedo; and Cathy Williams, Appellees,**

v.

**The CITY OF DES MOINES, Iowa; John Doe and Other Unknown Individual Officers of the Des Moines Police Department, Respondents,**

and

**Dennis Kendall and WHO–TV, A Division of Palmer Communications Incorporated, Appellants.**

No. 86–1048.

Supreme Court of Iowa.

Sept. 23, 1987.

Robert Koop Johnson and Neil J. Fruit, II, of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, and Michael A. Giudicessi, Des Moines, for appellants.

Thomas J. Lenihan of Reed & Lenihan, Des Moines, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

When William Argumedo committed suicide in Des Moines in 1986, several observers were present, including Des Moines police officers and television reporters from WHO–TV and two other Des Moines stations. Portions of the videotapes made at the scene were aired as a part of the stations' regular newscasts. The plaintiffs, to whom we will refer collectively as Bells, contemplated a suit against the city based on the police officers' handling of the threatened suicide, and they applied to the district court for an order to "perpetuate" the testimony of Dennis Kendall, WHO–TV's news director, for possible use in that suit. *See* Iowa R.Civ.P. 159–66.

As a part of their requested deposition of Kendall, Bells also asked that the station be ordered to preserve its videotape of the suicide, alleging that the videotape represented "the best and most competent evidence in support of [Bells'] claims" against the city, and unless the court ordered the station to preserve the videotape, it would be destroyed in the normal course of its business.

WHO–TV did not receive notice of the application to perpetuate testimony and did not appear at the initial hearing on it. However, its interest was piqued, to put it mildly, when Kendall was ordered to appear for the deposition and "to have in his possession and make available ... for re-

view and/or copying any and all videotape" of the Argumedo suicide.[1]

WHO–TV agreed to furnish copies of all footage which had been aired on its newscasts, but it moved to quash the order insofar as it required production of "raw footage," or videotapes which were retained in its files. It contended that these tapes were presumptively privileged and that Bells had failed to rebut that presumption. *See Lamberto v. Bown,* 326 N.W.2d 305, 309 (Iowa 1982); *Winegard v. Oxberger,* 258 N.W.2d 847, 849–52 (Iowa 1977). Following a hearing on the station's motion to quash, the court reaffirmed its prior order, and WHO–TV appealed. We reverse and remand.

We need not elaborate on the competing interests at stake in these cases. It is the general rule that a litigant is entitled to "every person's evidence." *Lamberto,* 326 N.W.2d at 306–07; 8 J. Wigmore, *Evidence* § 2192, at 70 (McNaughton rev. ed. 1961). On the other hand, there is a countervailing interest in maintaining a free press under the first amendment to the United States Constitution and article I, section 7 of the Iowa Constitution, which has given rise to our recognition of a "qualified" reporter's privilege. *See, e.g., Lamberto,* 326 N.W.2d at 306–07; *Winegard,* 258 N.W.2d at 849–52.

In weighing these interests, the scale has generally tilted toward requiring disclosure of the disputed evidence if the case involves a criminal charge, *e.g., United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039, 1066 (1974), or a grand jury proceeding, *e.g., Branzburg v. Hayes,* 408 U.S. 665, 685, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626, 642 (1972). Also, in a civil case, a claim of privilege is frequently subordinated when the party claiming the privilege is involved as a party. A libel case is perhaps the best example. *See, e.g.,*

*Herbert v. Lando,* 441 U.S. 153, 155–58, 99 S.Ct. 1635, 1638–39, 60 L.Ed.2d 115, 121–23 (1979). *See generally Lamberto,* 326 N.W.2d at 307. The present case, of course, falls outside these categories.

■ The test for evaluating a claim of reporter privilege was stated in *Lamberto:*

> [A] determination must be made whether the resisting party falls within the class of persons qualifying for the privilege. If that preliminary showing is made, the material is to be treated as presumptively privileged, and the burden falls on the requesting party to satisfy the court by a preponderance of the evidence, including all reasonable inferences, that (1) there is a probability or likelihood that the evidence is necessary and (2) it cannot be secured from any less obtrusive source. If the court is so satisfied, an in-camera examination of the evidence should be ordered.

326 N.W.2d at 309. Under this test, a reporter falling within the "class of persons qualifying for the privilege" is presumptively entitled to its protection. Once this presumptive status is established, the party seeking access to the evidence must show the necessity for it and the unavailability of other sources.

I. In connection with the threshold showing that WHO–TV falls within the protected class, the parties stipulated that

> WHO–TV is a television station, and as part of that function it employs a full-time news staff whose function is to gather and edit and disseminate the news, and further, that Mr. Kendall is the news director of WHO–TV.

■ Bells argue that WHO–TV's status as a news gatherer, standing alone, does not cloak it or its reporter with a presumptive privilege and, if *Lamberto* may be so read, it should be modified. The test of *Lamberto* for establishment of a presump-

---

**1.** WHO–TV does not challenge Bells' use of our perpetuation of testimony rules, Iowa R.Civ.P. 159–66, to obtain an order preserving real evidence. These rules consistently refer to preservation of testimony and do not mention their use to preserve real evidence. Federal cases, however, have applied similar federal rule 27(a) to allow perpetuation of real evidence. *See, e.g.,*

*Martin v. Reynolds Metals Corp.,* 297 F.2d 49, 56 (9th Cir.1961); *Petition of Ingersoll-Rand,* 35 F.R.D. 122, 124 (S.D.N.Y.1964); *see generally* 4 J. Moore, J. Lucas, G. Grotheer, Jr., *Moore's Federal Practice* § 27.13 (2d ed. 1986). In any event, it appears a court would have inherent power to order such preservation even in the absence of a rule. *See* Iowa R.Civ.P. 131, 159.

tive privilege is clear, and we reaffirm that test here: if the resisting party falls within the class of persons qualified for the privilege, such as a reporter, and the information in question is obtained in the news gathering process, it is presumptively privileged. This, of course, does not mean that a reporter may raise the privilege to avoid testifying, as any other citizen, to observations made as an eyewitness. *See Branzburg,* 408 U.S. at 685–86, 92 S.Ct. at 2658–59, 33 L.Ed.2d at 642 (testimony before grand jury).

In the present case, the district court said:

> The court notes that it is the manager of the TV station who's being subpoenaed, and not any reporter. That no notes or script of mental impressions of a reporter is asked for, nor any research requested, nor explanation of why cameras were located where they were, nor any confidential informants sought, nor is anyone asked to produce any information obtained from any private source. What is asked for is something that was open for the whole world to see, and is now fixed in time on the videotape. The court questions whether under these circumstances the raw videotape footage is confidential.

The court thus applied its own test in assessing WHO–TV's claim of presumptive privilege, one which appears to turn on a perceived lack of editorial judgment, the absence of confidential informants, and the fact that the event was "open for the whole world to see." In rejecting the claim of presumptive privilege on these grounds, the court failed to apply the proper test which, as we have previously discussed, turns simply on whether the resisting party is a member of the protected class engaged in the news gathering process. *Lamberto,* 326 N.W.2d at 309. We therefore must reverse and remand for application of the proper test. Of course, even if a presumptive privilege is established, the proponents may rebut the presumption by showing a likelihood that the evidence is necessary and that it cannot be secured from any less obtrusive source. *Id.*

II. Bells have an alternative argument that, even if a presumptive privilege had been established, they had successfully rebutted it. The district court agreed. Bells, however, introduced no evidence at the hearing on either the necessity or exhaustion criteria. Bells' counsel merely made a legal argument to the court, not offered as a professional statement, in which he said that

> [w]e believe the videotape will reveal the physical proximity, the layout of the scene at the time. That the videotape would reveal that there was an opportunity to capture Mr. Argumedo. That the videotape would reveal that at point [sic] in time prior to his death that the gun in question was unloaded and that the police department should have been aware of that. And that the videotape would reveal negligent implementation of negotiation techniques and procedures at the time. The videotape would reveal all three of these.

Even if we were to accept counsel's argument as evidence, the most that could be said for it is that the tapes would be useful in Bells' case; it fell short of establishing that the tapes were necessary to the case and did not even purport to establish that other sources could not furnish the same information. In fact, it appears from other portions of Bells' argument to the district court that no alternative sources had been attempted to be used by them, except the other two television stations which had covered the Argumedo suicide. The district court's conclusion that the privilege had been rebutted was therefore without factual support. Based on the record presented to the district court, any presumptive privilege which might have been established was not rebutted.

The portion of the district court's order which provided for the preservation of the tape is not challenged by WHO–TV, and we believe it was appropriate under the circumstances. The videotape in question should be preserved for as long as the use of the tapes in question may remain an issue, either in the district court or on appeal.

That portion of the judgment ordering the production and copying of the videotape is reversed, without prejudice to the right of Bells to attempt to obtain its use under a proper record and the application of the *Lamberto* test.

REVERSED AND REMANDED.