WATERLOO/CEDAR FALLS COURIER, Appellant,

v.

HAWKEYE COMMUNITY COLLEGE, Willie Culpepper, Malcolm Mcgregor, Ruth Niemann, Luane Lorenzen, Mark Birdnow, Leroy L. Hoff, Harold Brock, Loren Steimel, and Ervin A. Dennis, Members of the Board of Trustees, Appellees.

Saul Shapiro and Nancy Raffensperger–Newhoff, Plaintiffs,

v.

Iowa District Court for Black Hawk County, Defendant.

No. 00–1585.

Supreme Court of Iowa.

June 12, 2002.

David H. Correll of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC, Cedar Falls, for appellant.

Michael A. Giudicessi and William J. Hunnicutt of Faegre & Benson LLP, Des Moines, for appellant and certiorari plaintiffs.

Matthew G. Novak and Thad J. Collins of Pickens, Barnes & Abernathy, Cedar Rapids, for appellees.

STREIT, Justice.

A local community college wants newspaper editors to tell who ratted them out. The editors stand firm and would be solaced by the words of a past newsperson:

> If your editorial writer ... "takes the fence," thinking of the dangers of antagonizing somebody or other, including the publisher's wife, he can't write anything worth reading and it is not worth while hiring him...."

H.L. Mencken, A Gang of Pecksniffs 199 (Theo Lippman Jr. ed., Arlington House, 1975).

The Waterloo/Cedar Falls Courier filed a lawsuit against Hawkeye Community College for alleged violations of the Open Meetings Act. After the Courier filed suit, two of its editors spoke with unidentified people present at the meetings in which the Board allegedly violated the open meetings law. Now, the College wants to know who talked and argues the editors must reveal their sources. Because we find the sought-after material is not necessary for the College's defense and the material could be obtained from other non-privileged sources, we reverse the district court's order for an in camera inspection of the information.

## I. Background and Facts

This is an interlocutory appeal and a petition for writ of certiorari arising from an Open Meetings Act case filed by Waterloo/Cedar Falls Courier against Hawkeye Community College and individually named members of the Board of Trustees. The Courier alleged the Board conducted an improper closed-session meeting in violation of Iowa Code chapter 21 (1999). In particular, the Courier argues the Board violated the Open Meetings Act by conducting a closed-session meeting regarding the competency of the president of the College. *See* Iowa Code § 21.5(1)(i). The Courier further alleged the Board was required to comply with the Open Meetings Act, contending the closed meeting was not necessary to prevent needless and irreparable injury to the president's reputation. *See id.* The Board denied these allegations claiming it was not required to comply with the Open Meetings Act because it conducted a closed-session meeting for the purpose of discussing strategy in matters relating to employment conditions of a College employee who is not covered by a collective bargaining agreement. *See id.* §§ 21.9, 20.9.

On two separate occasions, the Board held its regularly scheduled meetings. At one of these meetings, the Board chairman made a motion to change the meeting to a closed session under Iowa Code section 21.9, rather than under Iowa Code section 20.17(3) as had been announced in the agenda. The second meeting was also closed. These two closed sessions led to the Board's firing the president of the College. The Courier filed suit against the Board claiming the College failed to comply with the Open Meetings Act. After filing suit, two of the Courier's editors talked with two people who were present at the closed sessions. The editors promised the informants they would not reveal their identities or the content of the discussions.

The Board began discovery by deposing the editors. During the depositions, both editors refused to identify the people to whom they spoke. The editors refused to reveal the information they received

from the informants or release their interview notes to the Board. The Board moved to compel the editors to reveal the informants' identities, the information disclosed by the informants, and the journalists' notes from the interviews. The district court entered an order compelling the editors to reveal to the district court, in camera, all of the information the editors received in return for their promise of confidentiality, "including names of the persons and statements by those persons." In denying the Courier's motion to reconsider the district court stated, the defendants

> have to show that the intended evidence is relevant, but they have no way of obtaining the evidence. That is why the court chose the most conservative method available to it by ordering the evidence to be submitted to the court for an in camera hearing.

The Courier filed an application for an interlocutory appeal with this court. The individual editors then filed a petition for writ of certiorari in the supreme court. We granted both and consolidated the proceedings for purposes of appeal.

## II. Scope of Review

■■■ Even though constitutional issues are involved, our review of the trial court's ruling on the discovery request is for abuse of discretion. *Bousman v. Iowa Dist. Ct.*, 630 N.W.2d 789, 796 (Iowa 2001). A reversal of a discovery ruling is warranted when the grounds underlying a district court order are clearly unreasonable or untenable. *Id.* (citing *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997)). We will also reverse upon a finding the trial court erroneously interpreted a discovery rule. *Id.* (citing *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000)). "[A] court has no discretion to issue a discovery order that lacks factual support or is in contra-

vention of governing constitutional or statutory provisions." *Id.*

■■■ On appeal, we also consider the editors' original petition for writ of certiorari. A writ of certiorari lies where the trial court acted illegally or otherwise exceeded its jurisdiction. *State Pub. Defender v. Iowa Dist. Ct.*, 633 N.W.2d 280, 282 (Iowa 2001). " 'Illegality exists when the court's findings lack substantial evidentiary support, or when the court has not properly applied the law.' " *Id.* (quoting *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998)). Therefore, our review of the district court's actions is for correction of errors of law. *Id.*

## III. The Merits

The Courier and its editors argue the College failed to establish the criteria articulated in *Lamberto v. Bown*, 326 N.W.2d 305 (Iowa 1982). In particular, the Courier contends the College failed to prove: (1) it had a compelling need for the information; and (2) it exhausted alternative, non-privileged sources for the information. The Courier also asserts the district court effectively concluded the Courier waived its constitutionally-based reporter's privilege through its initiation of the open meetings action against the College. The district court ordered an in camera inspection to determine the relevancy of the evidence— "a procedure 'borne of a paradox—the need to see evidence in order to determine whether the evidence can be seen.' " *Lamberto*, 326 N.W.2d at 308 (quoting *In re Farber*, 78 N.J. 259, 394 A.2d 330, 337 (N.J.1978), *cert. denied*, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978)). We must determine whether the trial court based its in camera discovery order upon unreasonable grounds. Before we turn to this central issue, we briefly address two arguments raised by the College. The College first asserts the reporter's privi-

lege does not apply in this case. It then argues if we find the privilege applies, the College is still entitled to the material as the Courier waived the editors' privilege.

## A. Applicability of the Reporter's Privilege

In the trial court's order compelling in camera inspection, the court ruled on whether the Courier was eligible for the shield afforded by the reporter's privilege. The court stated, "This record clearly supports the fact that the plaintiff is a covered party and is entitled to the shield. . . ." The College in its appellate brief argued,

it remains entirely unclear whether these editors were acting as part of the "news gathering process" or simply attempting to gather discovery for the pending lawsuit. . . . If the district court committed any error at all in resolving this issue it was assuming the Courier established the threshold showing for the privilege.

The College has not at any point specifically challenged the trial court's finding that the editors and the information they hold qualify for protection under the reporter's privilege. Though the district court did not specifically rule on the issue of whether the editors were engaged in the newsgathering process, we assume the facts necessary to uphold the court's ruling. *EnviroGas, L.P. v. Cedar Rapids/Linn County Solid Waste Agency*, 641 N.W.2d 776, 781 (Iowa 2002). We must determine whether there is substantial evidence upon which the trial court based its ruling. *Id.*

■ In adopting the Iowa reporter's privilege, we stated that for a journalist to gain protection under this shield, a determination must be made "whether that party falls within the class of persons qualifying for the privilege." *Lamberto*, 326 N.W.2d at 309. The party must have been engaged in the newsgathering process.

*Bell v. City of Des Moines*, 412 N.W.2d 585, 588 (Iowa 1987). Once a journalist satisfies this preliminary showing, the information sought is "presumptively privileged." *Id.* The burden then shifts to the party seeking the information to rebut the presumption. *Id.*

■ The editors in this case are entitled to the reporter's privilege as they are journalists. *See Lamberto*, 326 N.W.2d at 309 (there is a presumption the privilege applies if the resisting party is a member of the protected class). The editors are employees of the Courier newspaper. One of the Courier's reporters tried to attend the Board's meetings, but was excluded after the chairman moved for a closed session. The editors were investigating the closed sessions and their research resulted in at least one published newspaper article. The editors have asserted and the evidence shows the editors were engaged in the newsgathering process when they talked to the informants. The College has done nothing more than merely suggest the editors took their hats off as reporters to act instead as litigants. In the absence of anything more than a mere assertion the editors acted in dual roles—one as litigant and the other as journalist—we cannot conclude the privilege does not apply. We conclude there is substantial evidence to support the district court's conclusion the editors are entitled to invoke the reporter's privilege. The College next asserts if we conclude the privilege applies, the Courier has waived it by filing suit against the College. We now turn to this issue.

## B. Waiver of Reporter's Privilege

■ The College alternatively argues if the privilege applies, the Courier newspaper waived their reporters' privilege by filing the open meetings action. The College is correct to assert *a* party may waive

the reporter's privilege. However, only the holder of the privilege may waive it. In the case before us the Courier, not the editors, filed the open meetings action. The editors are not a party to this case. The Courier is not the holder of the reporters' privilege, but the privilege is strictly held by the editors and is subject to waiver only by their actions. *See United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir.1980); *Los Angeles Mem'l Coliseum Comm. v. Nat'l Football League*, 89 F.R.D. 489, 494 (C.D.Cal.1981); *Diaz v. Eighth Judicial Dist. Ct. ex rel. County of Clark*, 993 P.2d 50, 57 (Nev.2000); *State v. Ventura*, 101 Ohio Misc.2d 15, 20, 720 N.E.2d 1024, 1028 (Ohio Com.Pl.1999). As such, the Courier did not waive the editors' privilege by filing suit against the College.

Even if we concluded the editors were parties to this action, their mere status as litigants is not sufficient to constitute a waiver of the privilege. Rather, a party must do something to waive the privilege. For example, a waiver of the privilege has most often been found where the plaintiff put the sought-after information into issue in the litigation and then attempted to prevent its disclosure by invoking the shield of privilege. *See, e.g., In re Marriage of Hutchinson*, 588 N.W.2d 442, 447 (Iowa 1999) (physician-patient privilege yields where the patient has brought mental or physical condition of patient into issue as basis for claim or as a defense); *Squealer Feeds v. Pickering*, 530 N.W.2d 678, 684 (Iowa 1995); *State v. Bastedo*, 253 Iowa 103, 112, 111 N.W.2d 255, 260 (1961) (waiver of attorney-client privilege where client sues attorney for breach of duty, fraud, or other improper or unprofessional conduct). In civil cases "where a reporter asserting the privilege is a party to the lawsuit and his action, motivations or thought processes are integral elements of the claims, disclosure is

often compelled." *Lamberto*, 326 N.W.2d at 307. The privilege may also be waived if the holder voluntarily discloses or consents to disclosure of any significant part of the matter or communication. *Squealer Feeds*, 530 N.W.2d at 684.

None of the above situations apply in this case. The editors are not parties to this action and their talking to people at the meetings is not an issue in the litigation concerning the meetings. In fact, to ensure their actions would not constitute a waiver, the Courier and its editors have emphasized the material obtained from the informants will not be used in litigation. The College has not articulated that in order to determine what happened at the closed-session meetings it is imperative that it know who the informants are. Rather, who spoke with the editors and what each said is not an issue in the underlying open meetings action. Because we have concluded the reporter's privilege applies in this case and has not been waived, we now turn to the final issue. We must determine whether the College has met its burden to subordinate the editors' First Amendment privilege to the interests in obtaining evidence.

## C. In Camera Inspection

In Iowa, we first recognized a reporter's privilege in *Winegard v. Oxberger*, 258 N.W.2d 847 (Iowa), *cert. denied*, 436 U.S. 905, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978), and in *Lamberto*, 326 N.W.2d at 305. The privilege protects confidential sources, unpublished information, and reporter's notes. *See* Iowa Const. art. I, § 7; *Winegard*, 258 N.W.2d at 852; *Lamberto*, 326 N.W.2d at 310. Whether the privilege has been established "turns simply on whether the resisting party is a member of the protected class engaged in the newsgathering process." *Bell*, 412 N.W.2d at 588 (citing *Lamberto*, 326

N.W.2d at 309). However, this is a qualified, not absolute, privilege as it may give way in certain circumstances. Once the presumptive privilege is established, the court may order a party to reveal the sought-after material only if the requesting party shows by a preponderance of the evidence: (1) there is a probability or likelihood the evidence is necessary; and (2) the evidence cannot be obtained from any less intrusive source. *Id.* at 587. If the court is satisfied these elements have been met, it may order an in camera inspection of the material. As a result of the inspection, if the court concludes the material is necessary to the claim or defense and it is probably admissible at trial, the requesting party may use the material. *Id.* (citation omitted).

▮ Applying these principles, the district court found "the [Courier] is a covered party and is entitled to the shield...." The court then ordered the in camera inspection of the material so it could "determine whether or not it is relevant to this case and whether it should be disclosed regardless of the journalistic shield." The Courier argues the court, despite outlining the *Lamberto* standards, disregarded them when it concluded

> there's no way the defendants can show the probability of or likelihood that the evidence is necessary because they don't know what it is.... As for the second part, can it be obtained by any other source, the plaintiff's attorneys have made it clear that they not only won't reveal the evidence, they do not intend to call the people involved and defendant has no other way of obtaining this evidence.

▮ In order to overcome the presumptive privilege, the district court must determine whether the party seeking the information has shown by a preponderance of the evidence the material is necessary and it is not available from other sources. *Lamberto*, 326 N.W.2d at 309. If the party requesting the material has not made this threshold showing, the district court errs if it orders a reporter to reveal the information so the court can determine if it is necessary. *See id.* at 305. Given the facts before us, we conclude the district court erred when it ordered the in camera inspection so it could determine whether the *Lamberto* requirements were satisfied.

In the instant case, two closed-session meetings held by the College's Board of Trustees resulted in the eventual forced resignation of the College's president. At each of these disputed meetings, only eight trustees were present, in addition to a number of other College employees. All eight of the trustees present at the meetings are named defendants in the underlying action. The editors spoke to two informants, both of whom were present at the two closed-session meetings. Each informant was privy to the content of the discussions at those meetings. The informants spoke to the editors with the expectation the information provided would be held in confidence. In discovery, the College deposed only two people—the editors—who could comment on the disputed material. The College engaged in no further discovery on this issue. The Courier stated it will not call either of the informants as witnesses because it did not rely on any of their information as a basis for the open meetings action.

Based on these facts, we conclude the material the College seeks is not necessary or critical to defense of the open meetings action. The Courier did not use any of the information the editors obtained from the informants as a basis for the lawsuit. Moreover, the Courier does not plan to call the informants as witnesses at trial. The only material relevant to the underlying claim goes to whether the College is a

governmental body subject to the requirements of the Open Meetings Act, whether it conducted closed-session meetings, and, if so, whether it complied with the open meetings law. Given these facts, it is impossible to conclude the sought-after material "go[es] to the heart of the litigant's case." *Lamberto*, 326 N.W.2d at 308 (quoting *Carey v. Hume*, 492 F.2d 631, 636 (D.C.Cir.), *cert. denied*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974)). It appears the only reason the College seeks this information is to find out who told on them. If this is the case, we are left also to assume the College would attempt to use this information for the purposes of impeachment. Although a legitimate use, this is an insufficient reason for compelling disclosure of the sought-after material. *See Lamberto*, 326 N.W.2d at 309–10 (citing *United States v. Nixon*, 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039, 1060 (1974)); *Rancho Publ'ns v. Superior Ct.*, 68 Cal.App.4th 1538, 1551, 81 Cal. Rptr.2d 274, 282 (Cal.Ct.App.1999). Because the College has failed to "demonstrate the compelling need for the evidence," an in camera inspection of the material is not appropriate. *Lamberto*, 326 N.W.2d at 310. Under these circumstances, we will not force the editors to disgorge this sought-after information. *See id.*

We also conclude the College did not prove by a preponderance of the evidence the material it seeks is not available by other less intrusive and non-privileged sources. Mere failure to obtain the material from the editors does not satisfy the *Lamberto* requirement that the College must have exhausted all other non-privileged sources for the same information. Because each trustee present at the closed-session meetings is named as a defendant in the action, the College is in the best position to know exactly what transpired at the Board's meetings. The College has within its control the minutes of the closed sessions which should reveal the substance of the meetings. Moreover, the College knows precisely which trustees and other employees were present at the meetings. There remain for the College many unexplored avenues of discovery for the sought-after material. The College has not attempted to find out what was said and what occurred at the meetings from anyone other than the Courier's editors. The College must exhaust these resources before going after the editors' privileged information. Because the College did not prove the only practical access to the material is through the editors, we will not compel the editors to reveal this information.

## IV. Conclusion

We conclude the grounds the trial court relied upon in ordering the in camera inspection were unreasonable. The College did not prove the disputed material is critical to its defense and is unavailable from any other non-privileged source. As such, it failed to meet the *Lamberto* requirements necessary to force the editors to reveal their informants. Accordingly, we vacate the trial court's order for an in camera inspection. We also sustain the editors' petition for writ of certiorari and remand with directions to enter a protective order preventing the College from obtaining the names of the informants and the information they disclosed to the Courier's editors. The matter of attorney fees abides in the ultimate result of the open meetings action. *See* Iowa Code § 21.6(3).

**REVERSED AND REMANDED; WRIT SUSTAINED.**